MORSE (TILGHMAN v.). See Case No. 14,044.

MORSE (UNITED STATES v.). See Case No. 15,820.

## Case No. 9,861.

### MORSE & BAIN TEL. CASE.

[9 West. Law J. 106.]

Circuit Court, E. D. Pennsylvania. 1851.

PATENTS—REISSUES—ENLARGEMENT OF CLAIMS—INVENTION—INFRINGEMENT—THE MORSE TELEGRAPHIC PATENTS.

[1. As the act of 1836 (5 Stat. 117), authorizes the amendment and reissue of a patent with the "same effect and operation in law" as if the specifications had been filed at first in the form taken in the reissue, there is no reason why a second reissue may not be granted.]

[2. While the claims of a reissue cannot embrace a different subject-matter from that sought to be patented originally, yet it is competent for the patent office to grant a reissue with claims broader than in the original.]

[3. The Morse patent of 1840, relating to the electric telegraph, in all its changes, asserts his title to two distinct patentable subjects, the first founded on the discovery of a new art, the second on the invention of means for practicing it.]

[4. The Morse electrical telegraphic patents,— the first as reissued on June 13, 1848, for a magnetic telegraph; the second, as also reissued June 13, 1848, and known as the "local circuit patent"; and the third, dated May 1, 1849, known as the "chemical patent,"—*held* valid, and infringed.]

In equity.

KANE, District Judge. This case is before us on final hearing upon the pleading and proofs. Professor Morse, under whom the complainants hold, has three patents: The first dated 20th June, 1840 [No. 1,647], reissued on the 25th January, 1846 [No. 79], and again reissued on the 13th June, 1848 [No. 117]. It is called the "Magnetic Telegraph Patent." The second, dated 11th April, 1846 [No. 4,453], re-issued on the 13th June, 1848 [No. 118], referred to as the "Local Circuit Patent." The third, dated 1st May, 1849 [No. 6,420], referred to as the "Chemical Patent." The bill charges that the respondents have infringed all three of these patents; the answer denies the infringements, and controverts the validity of the patents.

The objections to the validity of the first patent, are stated in the defendants' brief, as follows: "(1) That it does not run from the date of Morse's French patent. (2) That the commissioner had no authority in law to re-issue a second time. (3) That the claims set out in the first re-issue are broader than the claims in the original patent; and the claims in the second re-issue broader than those of either of the former; and are not for the same invention."

1. The first of these objections founds itself upon the fact that Mr. Morse had obtained a patent in France for this same invention twenty-two months before his patent issued

here; and it asserts, that under the 2d proviso of the 6th section of the act of 1839 [5 Stat. 353], his American patent should in consequence have been limited to the term of fourteen years from the date of the French patent; and that being otherwise it is void. Mr. Morse's application for a patent in this country was made in April, 1838, and was filed and acted on in the patent office before the 10th of that month. His French patent bears date the 18th of August following. There is therefore no room for questions, which were argued so elaborately, of the proper interpretation of this proviso in the 6th section of the act of 1839, and the 8th section, 2d clause, of the act of 1836, which was also invoked, in any possible bearing upon the case of Mr. Morse.

2. The second objection to the patent is that the act of congress makes no provision for a second surrender and re-issue. The 13th section of the act of 1836, which provides in certain cases for the surrender of a defective patent, and its re-issue in an amended form, regards the new patent as substituted for the old one, with just the "same effect and operations in law" as if the specification had been filed at first in the form which it takes in the re-issue. It is difficult to see why, if the original patent could be amended, its substitute, having all the legal attributes of the original, cannot be amended also.

3. We pass to the third objection, the supposed variance in the re-issue. It is not the meaning of the law that the patentee who applies for a re-issue must at his peril describe and claim in his new specification, either in words or idea, just what was described and claimed in his old one. His new specification must be of the same invention, and his claim can not embrace a different subject-matter from that which he sought to patent originally. But, unless we narrow down the connection which the statute contemplates till it becomes a mere disclaimer, it is not possible in any case to frame a corrected specification which shall not be broader than the one originally filed. To supply a defect, to repair an insufficiency, is to add—either directly or by modifying or striking out a limitation—in either form the effect is to amplify the proposition; in the case of a specification under the patent laws it is to amplify the description and enlarge the claim.

After a repeated and careful examination of the three specifications, with their respective claims, fully aided by the acumen of highly ingenious counsel, the court has not found any material difference of import between them. Mr. Morse's patent of 1840, in all its changes, asserts his title to two distinct patentable subjects,—the first, founded on the discovery of a new art; the second, on the invention of the means of practicing it.

1. That he was the first to devise and practice the art of recording language at telegraphic distances by the dynamic force of the electro-magnet, or, indeed by any agency whatever, is, to our minds, plain upon all the evidence. Mr. Morse's patent of 1846, as re-issued in 1848, claims the local or independent circuit in these words: "The employment in a certain telegraphic circuit, of a device or contrivance called the 'receiving magnet,' in combination with a short local independent circuit or circuits, each having a register and registering magnet, or other magnetic contrivances for registering, and sustaining such a relation to the registering magnet or other contrivances for registering, and to the length of circuit of telegraphic line as will enable me to obtain, with the aid of a main galvanic battery and circuit, and the intervention of a local battery and circuit, such motion or power for registering as could not be obtained otherwise without the use of a much larger galvanic battery, if at all."

It is beyond controversy that the local circuit patent has been infringed upon at some of the stations of the respondents' line; and it is the opinion of the court that it is also violated whenever the branch circuit of Mr. Rogers is employed. We have not been able to see the asserted difference in principle between the two devices. Both are equally well described as branch or as local circuits. They have the same purpose; they effect it by the same instrumentality, even in appearance to great degree; and they seem to vary only in this: that the one derives its electric fluid from a battery placed within a line of the main circuit; the other from a battery placed without it. The change may be for the better; or it may not; if it be, it is patentable as an improvement; but it can not be used without Mr. Morse's license, until after his patent has expired.

The third patent is for the chemical telegraph. The subject of it is clearly within the original patent of Mr. Morse, if we have correctly apprehended the legal interpretation and effect of that instrument. We will only say that we do not hold it to have been invalidated by the decision of the learned chief justice of the District of Columbia on the question of interference. The forms of the two machines before were not the same; and the leading principle of both having been already appropriated and secured by the magnetic telegraph patent of 1840, nothing remained but form to be the subject of interference.

[See Cases Nos. 9,858, 9,859, 13,036, 13,034, 13,104, 5,103, 2,909, and 13,027; 15 How. (56 U. S.) 62, 109, 137; 21 How. (62 U. S.) 456, 460.]